# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 20, 2013

## DONALD E. BLACKBURN, ET AL. v. GEORGE BLACKBURN, ET AL.

### Direct Appeal from the Chancery Court for Fayette County
#### No. CH-13880    William C. Cole, Chancellor

---

### No. W2012-00058-COA-R3-CV - Filed October 22, 2013

---

Defendants challenge only the Chancery Court's subject matter jurisdiction to enter an order regarding a 444 acre farm located in Fayette County. For the following reasons, we find the Chancery Court acted with subject matter jurisdiction. The jurisdiction of the Chancery Court, therefore, is affirmed.

### Tenn. R. App. P. 3; Appeal as of Right; Jurisdiction of the Chancery Court is Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined, and HOLLY M. KIRBY, J., concurred in result only.

George D. Blackburn, Dilley, Texas, *pro se*

Jerry H. Schwartz, Memphis, Tennessee, for the appellant, Betty Blackburn

Julie C. Bartholomew, Somerville, Tennessee, for the appellees, Donald E. Blackburn, et al

# MEMORANDUM OPINION[1]

## I. FACTS & PROCEDURAL HISTORY

This appeal concerns the subject matter jurisdiction of the Fayette County Chancery Court to enter an order regarding a 444 acre farm located in Fayette County.

George C. Blackburn ("Decedent"), a resident of Memphis, Tennessee, died testate on August 14, 1997. His Last Will and Testament ("Will") was admitted to probate in the Shelby County Probate Court on April 28, 1999. At the time of his death, Decedent owned a 444 acre farm in Fayette County, which, through his Will, he devised as follows: a life estate in the western one-half to his son, George D. Blackburn ("George"), a life estate in the eastern one-half to his son, Donald E. Blackburn ("Donald"), with the remainder interest vested equally in Decedent's three grandsons, Donald M. Blackburn,[2] Joseph P. Blackburn, and Robert C. Blackburn.

Apparently, prior to his death, Decedent entered into a written and recorded lease agreement with his son, George, leasing the 444 acre farm to George for 55 years for $1.00 per year, to end at the end of the year 2047. Additionally, in 1996, Decedent's wife, Betty Blackburn, acting as attorney-in-fact for Decedent, executed a Quit Claim Deed to the 444 acre farm to herself. However, this property was ultimately ordered to be returned to Decedent–i.e. his Estate. *See Blackburn v. Blackburn*, 63 S.W.3d 338, 344 (Tenn. Ct. App. 2001).

On March 7, 2005, Decedent's son, Donald, and Donald's sons, Donald M. Blackburn, Joseph P. Blackburn, and Robert C. Blackburn[3] (collectively "Plaintiffs"), filed a "Complaint for Declaratory Judgment, Partition and Accounting" in the Fayette County Chancery Court. The complaint alleged, among other things, that George had excluded Plaintiffs from the farm property and that George and Betty were committing waste on the

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]It appears that the Will erroneously listed the grandson's name as Donald E. Blackburn.

[3]Donald acted as next friend of Robert C. Blackburn, a minor.

property by selling large amounts of sand located thereon. The complaint requested that the property be partitioned, that the Quit Claim Deed be removed as a cloud on Plaintiffs' title, and that the 55-year lease be held invalid because it was "either forged, fraudulently obtained, or obtained by overreaching an elderly person[,]" or alternatively, that it be set aside for lack of adequate consideration.

On August 18, 2011, Plaintiffs filed a "Motion for Partial Summary Judgment" in the Fayette County Chancery Court asking the court to declare the lease to George invalid. Plaintiffs relied, in part, upon Decedent's 1996 Response to a "Petition for the Appointment of a Conservator" over him filed by Betty and George. In the Response, Decedent denied leasing the property to George, he alleged that the Power of Attorney "was obtained by fraud and deceit" and that Betty and George had "acted in concert to perpetrate a fraud" against him regarding the Quit Claim Deed.

On November 3, 2011, a hearing was held in the Fayette County Chancery Court on Plaintiffs' "Motion for Partial Summary Judgment."[4] After which, the Chancery Court entered an order granting Plaintiffs' motion. Specifically, the court found "no material fact in dispute that the Lease Agreement covering the 444 acre farm . . . is invalid, unenforceable, and ineffectual, as a matter of law[.]" On December 5, 2011, George and Betty, acting *pro se*,[5] filed a "Motion to Reconsider Order on Partial Summary Judgment" as well as a premature Notice of Appeal to this Court.

On January 25, 2012, George and Betty filed a "Combined Motion . . . of Defendants to Have Widow's Elective Share Set Aside by Chancery and Awarded to Betty Blackburn." George and Betty claimed that Donald, as executor of Decedent's Estate, had failed to award her an elective share, and they prayed for the court to award her an elective share from the western one-half of the property in which George held a life estate under the Will. The following day, the Chancery Court entered an "Order Granting Injunction" enjoining the parties "from engaging in any activities on the subject 444 acre farm which constitute waste, including but not limited to, the removal of sand, dirt, or gravel, the cutting of timber, or any other activity thereon that permanently damages same, pending the further orders of the Court." In March of 2012, the Chancery Court also entered an "Interlocutory Order" allowing Donald to "enter and enjoy the use of the entire 444 acre farm without interference by any Defendant" "pending the announcement and entry of a final decree in this cause[.]"

---

[4]No transcript of this hearing is included in the record.

[5]Betty is represented by counsel on appeal; however, George remains self-represented.

-3-

A trial was held on March 22, 2012,[6] after which the Chancery Court entered a "Final Order Granting Judgment." The Chancery Court found that George and Betty had committed waste on the farm property and it awarded the remaindermen–Donald M. Blackburn, Joseph P. Blackburn, and Robert C. Blackburn–a $750,000.00 judgment. It also found that George and Betty had wrongfully and unlawfully excluded Donald from the farm property for a 15-year period, and in lieu of a monetary judgment, it awarded Donald "the full, sole, exclusive and unobstructed possession of said farm for the next ensuing 15 year period." George and Betty then filed a timely second Notice of Appeal to this Court.[7] Pursuant to an Order of this Court directing the entry of a final judgment, the Chancery Court entered an "Amended Final Order Granting Judgment" on April 12, 2013, adjudicating Plaintiffs' requests regarding the Quit Claim Deed and for partition of the farm property. Specifically, the Chancery Court found the requests moot as Betty, pursuant to an Order of the Shelby County Probate Court, had reconveyed the farm property to Decedent's Estate, and as the court had granted a life estate in the eastern one-half of the property to Donald and a life estate in the western one-half of the property to George, subject to the 15-year period of exclusive possession of the whole by Donald.

## II.   ISSUE PRESENTED

On appeal, George and Betty challenge only the Chancery Court's subject matter jurisdiction to consider Plaintiffs' claims. For the following reasons, we find the Chancery Court acted with subject matter jurisdiction.

## III.   DISCUSSION

According to Defendants' appellate briefs,[8] on October 6, 1999, Decedent's widow, Betty, filed a *pro se* "Petition for Elective Share, Year's Support, Exempt Property and Homestead" in the Shelby County Probate Court. Thereafter, according to their briefs, on April 17, 2002, the Probate Court entered a "Consent Order for Temporary Injunction and Award of Year's Support." The order purportedly enjoined George and Betty, "pending further Orders from the Probate Court," from removing timber from the property and from removing sand or dirt from the property in a manner significantly different from that exercised by them during the period from 1999 to the then-current date. They claim that the April 17, 2002 order awarded Betty $25,000 from the estate to settle her claim, as surviving

---

[6]No trial transcript is included in the record.

[7]This Court granted Appellants George and Betty numerous extensions to comply with  the Tennessee Rules of Appellate Procedure.

[8]George and Betty filed identical appellate briefs with the exception of the Conclusion sections.

spouse, for one year's support, but that "[t]he Probate Court has not divided decedent's estate to award Appellant Betty Blackburn her elective share to date, and this matter is still pending."

On appeal, George and Betty argue that the Shelby County Probate Court possessed exclusive jurisdiction over the 444 acre farm property, and therefore, that the Fayette County Chancery Court lacked subject matter jurisdiction to enter an order concerning the subject property. Defendants assert two bases in support of their argument. First, they contend that Betty's petition for an elective share remains unsatisfied and that because "the property is essentially the only thing of value left in the estate[,]" Betty's elective share will likely be satisfied through receipt of a portion of the property, itself, or from a portion of the proceeds following a court-ordered sale of the property. Second, Defendants rely upon the order purportedly entered by the Probate Court enjoining certain activities "pending further Orders from the Probate Court[.]" According to Defendants, by implying that it would enter further orders, the Probate Court "overtly and specifically exercised its exclusive jurisdiction over the 444 acre property[.]"

The documents relied upon by Defendants–the "Petition for Elective Share, Year's Support, Exempt Property and Homestead" and "the "Consent Order for Temporary Injunction and Award of Year's Support"–are not included in the record before this Court. Accordingly, in determining whether the Chancery Court possessed subject matter jurisdiction, we will not address the effect, if any, of Wife's alleged outstanding elective share or of the Probate Court's alleged intention to secure exclusive jurisdiction over the farm property. *See State v. Caudle*, 388 S.W.3d 273, 277 (Tenn. 2012) ("It is, of course, the duty of an appellant to provide a record that conveys a fair, accurate, and complete account of what transpired regarding the issues forming the basis for the appeal.") (citations omitted). We will simply determine whether the Chancery Court possessed jurisdiction over the particular types of claims asserted in Plaintiffs' complaint.[9]

"'The concept of subject matter jurisdiction implicates a court's authority to hear and

_____

[9]We note that the defendants do not argue that the Chancery Court lacked jurisdiction over the particular types of claims asserted. Instead, their argument that the Chancery Court lacked subject matter jurisdiction is based solely on the alleged prior and continuing jurisdiction of the Probate Court, of which proof is deficient. Although not raised by the defendants, because subject matter jurisdiction may be raised by the appellate court *sua sponte* on appeal, we find it appropriate to consider whether the Chancery Court possessed jurisdiction over the claims asserted. *See Wilken v. Wilken*, No. W2012-00989-COA-R3-CV, 2012 WL 6727197, at *4 (Tenn. Ct. App. Dec. 27, 2012) ("[T]he issue of subject-matter jurisdiction may be raised at any time during the proceedings, by the parties or by the court. A court may raise the issue of subject-matter jurisdiction *sua sponte*, even where no party objects.") (citations omitted); *County of Shelby v. City of Memphis*, 211 Tenn. 410, 411, 365 S.W.2d 291 (Tenn. 1963).

decide a particular type of case.'" *State ex rel. Whitley v. Lewis*, 244 S.W.3d 824, 830 (Tenn. Ct. App. 2007) (quoting *White v. State ex rel. Armstrong*, No. M1999-00713-COA-R3-CV, 2001 WL 134601, at *2 (Tenn. Ct. App. Feb.16, 2001)). "A court must have subject matter jurisdiction over a matter for the matter to be adjudicated." *Tenn. Envtl. Council v. Water Quality Control Bd.*, 250 S.W.3d 44, 55 (Tenn. Ct. App. 2007) (citing *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Cashion v. Robertson*, 955 S.W.2d 60, 63 (Tenn. Ct. App. 1997)). In the absence of subject matter jurisdiction, a court's order is not valid or enforceable. *Whitley*, 244 S.W.3d at 830.

Tennessee courts derive their subject matter jurisdiction from the state constitution or from legislative acts. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Whether subject matter jurisdiction exists in a particular case depends upon the nature of the cause of action and the relief sought. *Benson v. Herbst*, 240 S.W.3d 235, 239 (Tenn. Ct. App. 2007) (citing *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994)). Therefore, when a court's subject matter jurisdiction is challenged, the first step is to ascertain the gravamen or nature of the case, and then we must determine whether the Tennessee Constitution or the General Assembly has conferred on the court the power to adjudicate cases of that sort. *Id.* "Courts may not exercise jurisdictional powers that have not been conferred on them directly or by necessary implication." *Osborn*, 127 S.W.3d at 739 (citing *First Am. Trust Co. v. Franklin–Murray Dev. Co.*, 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001); *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999)). "'[W]hen an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal.'" *Id.* at 741 (quoting *Dishmon*, 15 S.W.3d at 480). The determination of whether subject matter jurisdiction exists is a question of law, and therefore, our review is de novo, without a presumption of correctness. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000) (citing *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999)).

Plaintiffs' "Complaint for Declaratory Judgment, Partition and Accounting" filed in the Fayette County Chancery Court sought the following: a declaratory judgment that both the Quit Claim Deed to Betty and the lease to George are null and void and, therefore, that they are stricken as clouds on title; a partition or sale of the farm property;[10] an accounting of income derived from the property since Decedent's death and a monetary judgment based on that accounting; a finding of waste on the property by Defendants; an accounting for all equipment, machinery and items passing under the Will; and an injunction against selling "any sand, soil, or hunting rights or other assets of the farm[.]" We address the chancery court's jurisdiction to adjudicate these claims below.

---

[10]Plaintiffs' partition claim was rendered moot; therefore, we will not address the chancery court's jurisdiction with regard to this claim.

Chancery Court is a court of general jurisdiction. ***In re D.Y.H.***, 226 S.W.3d 327, 330 (Tenn. 2007). "The chancery Court has all the powers, privileges and jurisdiction properly and rightfully incident to a court of equity." **Tenn. Code Ann. § 16-11-101**.

### *A. Declaratory Judgment*

"A declaratory judgment is proper in chancery [court], but only if chancery originally could have entertained a suit of the same subject matter." ***Zirkle v. City of Kingston***, 296 S.W.2d 356, 363 (Tenn. 1965) (citing Gibson, Suits in Chancery § 36, n.62 (5th ed. 1955)). Here, Plaintiffs' sought a judgment declaring the lease and the Quit Claim Deed invalid, claiming they were fraudulently obtained, and removing such as clouds on the title.

Chancery courts have exclusive jurisdiction of suits to set aside fraudulent conveyances, **3 Tenn. Prac. Rules of Civil Procedure Ann. § 2:4 (4th ed.)** (citing Tenn. Code Ann. § 29-12-101), and "suit[s] to remove a cloud on title, [are] one of a class of suits in which courts of chancery historically have enforced their jurisdiction." ***Huggins v. Emory***, 484 S.W.2d 351, 353 (Tenn. 1972) (citing *Johnson v. Cooper*, 10 Tenn. 524 (1831)). Because the underlying claims on which the declaratory judgment was sought could have been brought in the Chancery Court, we find the Chancery Court properly exercised subject matter jurisdiction over the declaratory judgment aspect of this case.

### *B. Accounting & Injunction*

"The Chancery Court of Tennessee has the inherent jurisdiction of 'all cases of an equitable nature[.]'" ***Ferguson v. Moore***, 348 S.W.2d 496, 498 (Tenn. 1961) (quoting *Lake v. McDavitt*, 81 Tenn. 26, 30 (Tenn. 1884)). "Among the well established heads of this inherent equity jurisdiction are suits involving 'trusts,' or for an 'accounting,' or for a 'discovery' or 'injunction.'" ***Id.*** (citing 1 Gibson's Suits in Chancery (5th ed.), sec. 29). Clearly, the chancery court possessed subject matter jurisdiction to adjudicate Plaintiffs' claims for an accounting and for an injunction.

### C. *Waste*[11]

In their "Complaint for Declaratory Judgment, Partition and Accounting," Plaintiffs claimed that George and Betty were "committing waste on the real property to the detriment of the remaindermen by selling off sand in large amounts by use of a number of trucks[.]" **(V1, 9)**. Waste is normally a tort action, ***Chapman***, 341 S.W.2d at 395, and the chancery court typically lacks jurisdiction to award unliquidated damages in a tort action. ***See Indus. Dev. Bd. of City of Tullahoma v. Hancock***, 901 S.W.2d 382, 383 (Tenn. Ct. App. 1995). However, waste was not the sole claim raised in Plaintiffs' complaint. As stated above, it sought an injunction, a partition, an accounting, and to remove a cloud on Plaintiffs' title–remedies which are inherently equitable. ***See Ferguson***, 348 S.W.2d at 498***; Hancock***, 901 S.W.2d at 383. "When a court of chancery takes jurisdiction of a case under its inherent jurisdiction it may decide all issues involved in the matter in order to prevent a multiplicity of actions." ***Hancock***, 901 S.W.2d at 384 (citing *Bryson v. Bramlett*, 204 Tenn. 347, 321 S.W.2d 555 (1958)); *see also Dickey v. Nichols*, No. 01-A-01-9007-CH00260, 1991 WL 169618, at *3 (Tenn. Ct. App. Sept. 4, 1991) (stating that the chancery court had jurisdiction over a waste claim). Due to the primarily equitable nature of the case, we find the chancery court properly exercised subject matter jurisdiction over Plaintiffs' related claim of waste.

## IV. CONCLUSION

For the aforementioned reasons, we find the Chancery Court acted with subject matter jurisdiction. The jurisdiction of the Chancery Court, therefore, is affirmed. Costs of this appeal are taxed to Appellants, George D. Blackburn and Betty Blackburn, and their sureties, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.

---

[11]Our Supreme Court has approved of the following "waste" definition: "'an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in its substantial injury.'" ***Chapman Drug Co. v. Chapman***, 341 S.W.2d 392, 396 (Tenn. 1960) (quoting *Thayer v. Shorey*, 287 Mass. 76, 191 N.E. 435, 437, 94 A.L.R. 307).